IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CARLA R. DODD,                                    CV. 1:11-cv-00380 RE

          Plaintiff,                              **OPINION AND ORDER**

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant.

REDDEN, Judge:

Plaintiff Carla R. Dodd ("Dodd"), brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the reasons set forth below, the decision of the Commissioner is affirmed and this matter is dismissed.

1 - OPINION AND ORDER

## BACKGROUND

Born in 1960, Dodd completed the eighth grade and has worked as an assembler. Tr. 25. In November 2005, Dodd filed an application for disability insurance benefits alleging disability since July 12, 2004, due to epilepsy and an affective/mood disorder. Her application was denied initially and upon reconsideration. In September 2007, a hearing was held before Administrative Law Judge ("ALJ"). In a decision dated July 20, 2009, the ALJ found Dodd not disabled. Dodd's request for review was denied, making the ALJ's decision the final decision of the Commissioner. Dodd sought judicial review of the Commissioner's decision, and the parties stipulated to a remand for a new hearing in September 2009.

On July 21, 2010, a second hearing was held. On October 18, 2010, the ALJ issued a new decision in which she found plaintiff not disabled

## ALJ's DECISION

The ALJ found Dodd had medically determinable severe impairments of seizure disorder, obesity, major depressive disorder, and hypothyroidism. The ALJ found that these impairments did not meet or medically equal a listed impairment.

The ALJ determined that Dodd retained the residual functional capacity to perform a full range of work at all exertional levels, limited by no climbing or driving, and no working around hazards such as moving machinery or heights.. The ALJ found she was restricted to simple unskilled work.

The ALJ determined that Dodd was able to perform her past relevant work

The medical records in this case accurately set out Dodd's medical history as it relates to her claim for benefits. The court has carefully reviewed the extensive medical record, and the

parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Dodd contends that the ALJ erred by: (1) finding her not fully credible; (2) finding that her depression did not meet or equal a Listing; (3) improperly rejecting the opinion of lay witnesses; (4) improperly determining her residual functional capacity ("RFC"); (5) failing to perform a functional analysis of her past work; (6) relying on erroneous Vocational Expert ("VE") testimony; and (7) allowing the VE to testify.

### I. Credibility

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a); 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007)(citing *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala,* 50 F.3d 748, 750 (9th Cir. 1995)(citing *Bunnell v. Sullivan,* 947. F.2d 341, 345-46 (9th Cir. 1991)(*en banc*)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen,* 80 F.3d at

3 - OPINION AND ORDER

1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2005).

The ALJ noted that Dodd's credibility was undermined by a lack of objective medical evidence. Tr. 256. The ALJ found plaintiff's assertion of disabling fatigue was inconsistent with her daily activities. Tr. 28-35, 255-59, 284, 298-300. The ALJ cited Dodd's non-compliance with recommended treatment. Dodd was referred to a mental health specialist, though it is unclear whether she went to that appointment, and she was referred to a neurologist, though there is no record that she went. Tr. 258-62, 484, 488. The ALJ noted that Dodd gave conflicting accounts of her marijuana use to the ALJ and medical providers. Tr. 34-35.

Moreover, a September 2010 consultative examination by David Gostnell, Ph.D., "indicates malingering of memory deficits," and he noted that "motivation and effort were questionable." Tr. 483. Dr. Gostnell reported that "Ms. Dodd's Minnesota Multiphasic Personality Inventory-2-RF validity scales raised serious concerns regarding the credibility of her responses to the test." Tr. 487. Dr. Gostnell concluded that Dodd's responses "...reflect exaggeration of somatic symptoms, cognitive impairments, and affective disturbance." Tr. 488.

The ALJ identified clear and convincing reasons to find Dodd not entirely credible as to her functional limitations.

///

///

## II. <u>The Listings</u>

The ALJ must determine whether a claimant's impairment meets or equals an impairment listed in "The Listing of Impairments" ("The Listings"). *See* 20 C.F.R. Part 404, Subpt. P, App. 1. The Listings describe specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." *See* 20 C.F.R. §§ 404.1525(a), 416.925(a). Most of these impairments are "permanent or expected to result in death." *Id.* "For all others, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months." *Id.* If a claimant's impairment meets or equals a listed impairment, he or she will be found disabled at step three without further inquiry.

The Listings describe the "symptoms, signs, and laboratory findings" that make up the characteristics of each listed impairment. *See* 20 C.F.R. §§ 404.1525(c), 416.925(c). To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. *See* 20 C.F.R. §§ 404.1525, 416.925. To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment. *See* 20 C.F.R. §§ 404.1525(a), 416.926(a).

Plaintiff argues that the ALJ erred by failing to find that her depression meets or equals the requirements of Listing 12.04. The required level of severity is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied:

/ / /

/ / /

5 - OPINION AND ORDER

A. Medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:

a.. Anhedonia or pervasive loss of interest in almost all activities; or

b. Appetite disturbance with change to weight; or

c. Sleep disturbance; or

d. Psychomotor agitation or retardation; or

e. Decreased energy; or

f. Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

i. Hallucinations, delusions, or paranoid thinking;

. . .

AND

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; ;or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration.

OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

. . .

3. Current history of 1 or more years' inability to function outside a highly structured living arrangement, with an indication of continued need for such an arrangement.

Plaintiff appears to argue that she meets the criteria of the listing part C.3. because she lived with her parents for a period of time, isolates herself, and takes her son shopping with her. These facts do not establish that she is unable to function outside of a highly structured living arrangement.

Plaintiff argues that the ALJ was required to develop the record by ordering a consultative, psychological evaluation. Plaintiff's Brief at 15. The ALJ did just that, which resulted in evidence of malingering. Tr. 259-62, 487-88, 496.

### III. Lay Witnesses

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); 404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512. The ALJ may also reject lay testimony predicated upon the testimony of a claimant properly found not credible when the lay testimony repeats the limitations expressed in the claimant's testimony. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). *See, Molina v. Astrue*, ___F.3d ___, 2012 WL 1071637 (C.A.9(Ariz.)).

Mr. Blevins is Dodd's father. He testified at the second hearing that Dodd's could walk about two blocks before needing to rest, that she appeared to be in pain about 90% of the time, and that she tires easily. Tr. 305.

Dodd's son, Cody Mcghees, testified at the second hearing that his mother appeared to be weak in the knees, that she wobbles slightly, and cannot walk more than one or two blocks. He testified that she appears to be in pain 80-90% of the time, that she cries once or twice a week, and that she cannot concentrate for more than an hour at a time. Tr. 308.

In September 2007 Ms. Raya completed a form prepared by counsel in which she gave brief answers to questions and circled numbers indicating the claimant's functioning level. Tr. 146-53. Ms. Raya is Dodd's sister. She reported that Dodd lives in her house, and she sees her 1-2 times a week. Ms. Raya reports that Dodd has, "through the years," become less and less active, and that she is "too tired" all the time. Tr. 147. Raya rated Dodd's ability to function as markedly limited in every category.

The ALJ properly rejected the lay testimony for the same reasons that he found Dodd's not fully credible as to her functional limitations. Tr. 259-60.

In November 2005 Roxanne Young filled out a form prepared by plaintiff's counsel on behalf of plaintiff's former employer, Peco. Tr. 82-83. Young checked "yes" to whether plaintiff's production decreased prior to her last day at work, and "yes" to whether plaintiff's pace or productivity was less than 80% of a normally productive employee.

The ALJ noted that the former employer declined to answer a question on the form regarding whether plaintiff exhibited work-avoidance behavior prior to her last day. Tr. 260. Nor did the employer provide evidence of any absences prior to May 11, 2004, two months before plaintiff's alleged onset date. The ALJ noted that the former employer did not indicate whether plaintiff was fired, as plaintiff testified, or whether she resigned. Finally, the ALJ noted that the employer provided no rationale or explanations for the answers on the questionnaire. *Id.*

In sum, the ALJ properly provided a detailed discussion of the lay witnesses' statements, and gave germane reasons for discounting them. *Lewis,* 236 F.3d at 512.

## IV. Residual Functional Capacity

Social Security Ruling 96-8p, entitled "Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims," addresses assessment of a claimant's RFC. SSR 96-8p (available at 1996 WL 374184). The Ruling defines the RFC assessment and instructs the ALJ to make findings in construing a claimant's RFC. The Ruling also instructs the ALJ to consider "all relevant evidence" in making RFC findings, and to address the claimant's exertional and nonexertional capacity. *Id.* at *5-6.

A claimant's RFC is an assessment of what a claimant can do in a work setting despite her mental or physical impairments. Here, the ALJ found that the claimant retained the RFC for work at all exertional levels, with the following non-exertional limitations: simple, unskilled work that involved no climbing, working around hazards such as moving machinery or heights, or driving. Tr. 254-62.

Plaintiff argues that the RFC was flawed because the ALJ failed to include limitations of stamina and fatigue which would interfere with pace, attention and concentration. The VE testified that, with those limitations, there were no jobs that that individual could hold. Tr. 314. Plaintiff contends that "[t]here is no evidence to support the contention that the claimant is able to sustain work 'in an ordinary work setting on a regular and continuing basis' for 8 hours a day, 5 days a week." Plaintiff's Opening Brief, p. 22.

The ALJ noted the one physician's statement supporting disability:

///

9 - OPINION AND ORDER

> Dr. Milano...opined on July 9, 2010, that the claimant was limited
> by severe fatigue consistent with a major depressive disorder. She
> reported that side effects of fatigue associated with the claimant's
> prescribed epilepsy medications had increased her depression. She
> opined that the claimant would have difficulty with sustaining full-time
> work even at a light or sedentary level of exertion and would likely
> work at a reduced pace [citation omitted]. She reported that exertional
> postural, manipulative, and environmental limitations were not applicable
> ...and that she would not need to lie down at unpredictable times during
> a work shift [citation omitted]. However, she reported that the claimant
> would like be absent from work more than four times a month [citation
> omitted]. Full weight cannot be given to Dr. Milano's opinion for the
> time period relevant to this complaint.

Tr. 261. The ALJ noted that Dr. Milano's opinion was dated July 2010, while the claimant's alleged onset date was July 12, 2004, and her last date insured was December 31, 2009. The ALJ noted that Dr. Milano's opinions were not reflected in the doctor's records, that they were offered on a form prepared by counsel, and that she had treated the claimant only on a yearly basis for about two years. The ALJ noted that Dr. Milano's opinion was contradicted by her opinion that the claimant remained capable of low stress jobs. Tr. 261, 475-86.

The ALJ granted significant weight to consultative examiners Vandana Bindal, M.D., and John H. Ellison, M.D. Tr. 257-58. Dr. Bindal examined Dodd on October 26, 2004. Tr. 196-98. Dodd reported she had had seizures since a young age, and that when she has a seizure "feel[s] very exhausted and remain sleepy continuously for one day." Tr. 196. Dodd complained of weakness, and admitted smoking marijuana daily for the past three months. Motor strength in all muscle groups was 5/5. There was no loss of muscle bulk, tone or strength. Dr. Bindal concluded that Dodd could stand or walk eight hours if she does not have a seizure, and that she should not go out in public alone because her seizure disorder was not well controlled.

Dr. Ellison examined Dodd on January 21, 2006. Tr. 200-02. Dodd reported that her seizures occur about once every two years, and the last seizure was July 2004. In addition, she reported that for the past ten years, she has minor seizures during which she feels dazed for a few minutes. These occur about every 1-2 weeks. She complained of memory problems, but reported no other impact on her activities of daily living. Dr. Ellison concluded that Dodd had no exertional limitations. Tr. 202.

The ALJ's determination of Dodd's RFC is supported by substantial evidence.

## V. Step Four Findings

The ALJ found that Dodd's RFC allowed her to perform her past relevant work at step four in the sequential proceedings. Tr. 262. Dodd asserts that this finding is based upon an erroneous RFC assessment, and that the ALJ was further required to perform a "functional analysis" of her past relevant work.

At step four in the sequential proceedings, the ALJ determines if the claimant can perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant can perform such work she is not disabled and the sequential evaluation concludes. *Id.* In construing his step four findings, the ALJ may draw upon a vocational expert's testimony to show that claimant can perform work in the national economy. 20 C.F.R. §§ 404.1560(b)(2); 416.960(b)(2). The ALJ's questions to the vocational expert must include all properly supported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The ALJ may then compare the demands of a claimant's past relevant work with the claimant's RFC in determining whether the claimant may presently perform such work. SSR 82-62, "Titles II and XVI: A Disability Claimant's Capacity to do Past Relevant Work" (*available at* 1982 WL 31386, at *3).

Here, the ALJ asked the vocational expert to evaluate the exertional demands relating to Dodd's past work as an assembler. Tr. 311-13. Both the VE in the original hearing and the VE in the hearing on remand stated that the assembler position is classified as unskilled, light work. Tr. 40-42, 311-13. The ALJ incorporated this testimony into his step four finding, and subsequently found that, because Dodd could perform "light" work, she could perform her past relevant work in the indicated position.

Dodd now asserts that the ALJ's findings regarding her past relevant work lack sufficient detail under SSR 82-62. The Commissioner's administrative ruling instructs that an ALJ should obtain information about from the claimant about her past relevant work, with additional instructions regarding a claimant's mental limitations. SSR 82-62 (available at 1982 WL 31386 at *3). Here, the record contains Dodd's reports of her past relevant work (Tr. 40-42, 311-13), and the vocational expert's testimony addressed this work. Because Dodd does not establish any work-related limitations stemming from mental limitations, the ALJ was not required to further develop the demands of Dodd's past relevant work pertaining to such limitations. Moreover, both VE's cited the *Dictionary of Occupational Titles (DOT)* in describing the demands of plaintiff's past relevant work. In summary, the ALJ's RFC analysis finding that Dodd could perform light work is affirmed for the reasons above. The ALJ's subsequent finding that Dodd could perform the indicated positions is affirmed also. Consequently, the ALJ's finding that Dodd was not disabled at step four in the sequential proceeding is affirmed.

///

///

///

## VI. The ALJ Did Not Err by Allowing the VE to Testify

Plaintiff contends that the VE was not qualified to testify because she had not placed a person in a job for two to three years. Plaintiff argues that the VE is required to have "current" experience in job placement, but cites no authority for that proposition.

## CONCLUSION

For these reasons, the ALJ's decision that Dodd is not disabled is based on correct legal standards and supported by substantial evidence. The decision of the Commissioner is affirmed.

IT IS SO ORDERED.

Dated this 27 day of April, 2012.

JAMES A. REDDEN
United States District Judge